TO BE ARGUED BY:
LOUIS E. MAZZOLA, ESQ.
TIME REQUESTED:
TEN MINUTES

SUPREME COURT: STATE OF NEW YORK
APPELLATE DIVISION: SECOND DEPARTMENT
====

THE PEOPLE OF THE STATE OF NEW YORK,

        Plaintiff-Respondent,              IND. #482-2014
                                                #462-2015

        -against-                    A.D.  #2016-09117
                                              #2016-09119

ANDY M. GAYOT, a/k/a ANDREW GAYOT ,

        Defendant-Appellant.
====

APPELLANT'S BRIEF AND APPENDIX

LAURETTE MULRY, ESQ.
Attorney for Appellant
Legal Aid Society
Appeals Bureau
Arthur M. Cromarty Court Complex
300 Center Drive
P.O. Box 1697
Riverhead, NY  11901-0960
(631) 852-1650, 1660

LOUIS E. MAZZOLA, ESQ.,
of Counsel
FILED:  September 18, 2017

## POINT I

**IT WAS REVERSIBLE ERROR WHEN THE COURT LIMITED THE SCOPE OF THE PRE-TRIAL SUPRESSION HEARING BY REFUSING TO ALLOW DEFENSE COUNSEL TO INQUIRE INTO THE FACTS AND CIRCUMSTANCES UNDER WHICH INCRIMINATING EVIDENCE WAS OBTAINED AGAINST APPELLANT DURING THE EXECUTION OF A PROBATION SEARCH ORDER ISSUED AGAINST BRANDON FORTUNE**

**Omnibus Motion:**

On December 16, 2014, appellant's first counsel moved, *inter alia*, to suppress "all evidence obtained as a result of the unlawful arrest of the defendant pursuant to CPL §710.20. [3]

In support of the motion, appellant provided a sworn affidavit which essentially denied the allegations contained in the felony complaints signed by the arresting officers.   It also contained the following statement with regard to the illegality of his arrest.  "It is my understanding from my attorney, that the arrest was without probable cause and in violation of the defendant's Constitutional Rights [United States Constitution, Amendments IV and XIV; New York Constitution, Article I, Section 12]." (Appendix A20).  (See Point III)

The People responded to appellant's Omnibus motion by affirmation dated February 3, 2014 which argued that appellant's motion was deficient in failing to present factual allegations to support the relief requested. (People's affirmation,

---

[3] At this time, appellant was only charged under indictment 482A-2014

Appendix A25).  The People alleged that appellant's moving papers had failed to satisfy the three-pronged test required to determine the sufficiency of the of the factual allegations in support of the motion as set forth in *People v Mendoza*, 82 N.Y. 2d 415, (1993).  The test enunciated in *Mendoza* provided that the Court consider (1) whether the defendant has alleged facts rather than conclusions; (2) the factual allegations in context with the prosecutor's theory of the case; and (3) the defendant's access to information necessary to support suppression.

The prosecutor's affirmation in opposition also revealed for the very first time, that evidence obtained prior to appellant's arrest was the result of what she concluded was a lawfully obtained and executed probation search order on the home of Brandon Fortune. (See Appendix A24).  This statement is significant for several reasons, the most important of which is that appellant could not have been aware of the existence of such an Order prior to making his motion and therefore had no opportunity to satisfy the factual predicate needed to challenge the legality of the Order as required under CPL 710.60 (1).

Indeed, this was appellant's first opportunity to learn the reason that his home was raided by law enforcement personnel on February 25, 2014.  This is further supported by the fact that there was no testimony at either the pre-trial hearing or trial that the occupants of the 258 North Green Avenue were ever advised by any of the 25 or more law enforcement personnel that they were there

pursuant to a court order of any kind.

Moreover, a copy of the probation search order, issued as it was against Brandon Fortune, was not even to be found in the court file maintained in appellant's case. Indeed, the prosecutor, referring to the Order in her affirmation stated that, "It is the People's understanding, upon information and belief, that a signed copy of said Order which was signed by District Court Judge Jennifer Henry is on file with the Clerk's Office in Central Islip, New York. The People have made a request for a copy of the signed order with the probation officer assigned to the case and will turn over a copy of such to the Court upon receipt."

In *People v Bryant*, 8 N.Y.2d 530 (2007), the court held that in determining the sufficiency of a defendant's factual allegations, a court must read defendant's suppression motion in the context of the case. Further, "[w]hether a defendant has raised factual issues requiring a hearing can only be determined with reference to the People's contentions." (*Mendoza*, id.). Moreover, a court must consider "the degree to which the pleadings may reasonably be expected to be precise in view of the information available to the defendant." (id. At 429).

In *People v Hightower*, (85 NY2d 988) [1995], defendant was charged with the sale of drugs. In his motion papers, defendant denied he sold drugs or assisted others in selling or possessing drugs. The court held that those allegations were sufficient when considered in the context of the case and in light of the minimal

information available to the defendant at the time of the motion, limited as it was, by the bare allegations in the complaint (id.at 990). The court observed that, based upon the meager information available to him, "defendant could do little but deny participation in the sale. Clearly, appellant here could not have known of the existence of the probation search order issued against Brandon Fortune.

Moreover, failure to comply timely with the appellant's discovery demand regarding any property obtained from the defendant (CPL 240.20(1)(f), placed him at a disadvantage regarding his ability to provide a factual basis for his claim that he was arrested without probable cause and that his Fourth Amendment rights were violated. In this regard, it is to be noted that appellant's moving papers dated November 11, 2014, cite the People's failure to comply with appellant's Demand for Discovery dated April 24, 2014. Defense counsel's affirmation in support of the motion cited the Court of Appeals decision in *Mendoza, supra* and noted the importance of such information as a factor to consider in determining whether the moving papers are sufficient to grant a hearing on a motion to suppress. Indeed, defense counsel observed that, "In the present case, by failing to timely comply with the Demand for Discovery, the prosecution has effectively denied the defendant the opportunity to use the Demand for Discovery in the motion to suppress presently pending. (See Appendix A17),

It should be noted here that defense counsel's Demand for Discovery was

27

made some 7 months prior to his Omnibus motion and yet the court decided that the branch of defendant's motion seeking to compel discovery was "… denied as premature."

Nevertheless, in deciding that portion of the motion seeking the suppression of physical evidence, and without addressing the issue of the factual sufficiency of appellant's moving affidavit in support of the motion, the Hon. Justice Fernando M Camacho held that:

> "The branch of the motion which seeks suppression of property recovered, is granted to the extent that a Mapp hearing is to he held prior to trial to determine the admissibility of any physical property recovered from the defendant *subsequent* to his arrest that was not recovered pursuant to a search warrant. All evidence recovered pursuant to the execution of a search warrant will be addressed herein." [emphasis supplied]

> The branch of defendant's motion which seeks suppression of properly noticed statements and identification procedures, pursuant to Criminal Procedure Law § 710.30 is granted to the extent that <u>Dunaway/Huntley</u> and <u>Wade</u> hearings are to be held prior to trial. (See Appendix A46, Decision and Order, Justice Fernando M. Camacho).

The only physical evidence recovered from the appellant that was not recovered as a result of a search warrant was recovered *prior* to appellant's arrest during the execution of the probation search order. It is therefore difficult to discern just what the *Mapp* hearing was intended to address, since all of the remaining physical property obtained from appellant's home was recovered pursuant to search warrants issued subsequent to his arrest. It is likewise difficult

to comprehend how a *Dunaway* hearing could be limited solely to a consideration of probable cause as it relates to the suppression of a statement or identification procedure but exclude consideration of the evidence recovered as a result of an arrest without probable cause.

**The Hearing Court erred when it ruled that it was long past the time when it would be appropriate to assert appellant's privacy interest and thereby refused to allow defense counsel to inquire into the circumstances surrounding the execution of the probation search order against Brandon Fortune:**

Shortly after the motion court rendered its decision on March 4, 2014, appellant was charged under a new indictment (462-15) on which he was arraigned on March 12, 2015. On that date, he was assigned new counsel who then relieved counsel who had been representing him on the first indictment.

When the matter was scheduled for pre-trial hearing with new counsel on December 15, 2015, Judge Barbara Kahn requested that the prosecutor set forth her understanding of the parameters of the hearing. (H-2, December 15, 2015). After acknowledging that it was the initial search of the home that led to appellant's arrest and that the items seized established the probable cause for appellant's arrest, the prosecutor maintained that the probation search order had never been controverted and was therefore beyond the scope of the hearing. (H-6, 41, 50, December 15, 2015).

Defense counsel stated that he believed that there were additional items that

29

were seized that were not sought in the search warrant [s] and that he should be permitted to inquire about those items. Here, defense counsel was referring to the items recovered as a result of the probation search order, however, the court denied appellant's application. (H-6, December 15, 2015).

Nevertheless, the execution of the probation search order was integral to appellant's arrest and therefore at several times during the hearing, defense counsel sought to inquire as to the execution of the Order. For example, the following exchange took place after Detective Rivera testified that a so called "SWAT" team participated in conducting the search because of the belief that weapons were in the house:

> Q. And why did you believe that? Had there been any observations of weapons by you?
>
> A. By me, No.
>
> Q. Okay, were you made aware by any other member of law enforcement that they searched (sic) weapons being in that house prior to going into it?
>
> MS. SKORUPA: Objection.
>
> THE COURT: Sustained
>
> Q. What made you believe there were weapon --- possible weapons in there?
>
> MS. SKORUPA: Objection.
>
> THE COURT: Ms. Skorupa, you wish to elaborate on your objection?
>
> MS. SKORUPA: Yes, Judge. The initial search of this home, the search order as we'll call it, as it has been called, was not in any way controverted

and the reason for which it was executed was not controverted and as a result of that, it goes beyond the scope of this hearing.

MR. BOCATO:  Judge, I'm just following up on his answer.  His answer was that there was a possibility of guns in the house, I should have the right to follow up on his answer. He could have said no. I didn't know what he was going to say.  He did say that he was aware.  So I should have the right to follow up on that.

THE COURT:  I 'm not going to permit you, Mr. Brocato, to circumvent the proper subject matter of this hearing.

(H-40,41, December 15, 2015).

Later, as defense counsel continued to question the basis for the probation

search order, the following exchange took place:

Q. Isn't it true that the probation search order gave you the right to search Brandon Fortune's room and any of the common areas? Correct?


A. Yes

Q. It didn't give you the right to search my client's room.  Mr. Fortune is not accused to have been living in my client's room, is he?

MS. SKORUPA:  Objection.

THE COURT:  The witness can answer it.

A. Probation search order allows us to check the entire house.

Q. If I'm not incorrect, didn't you just say the probation order allowed you to check the defendant's room and the common areas?


A. Yes.  In addition, the rest of the house.

Q. You're sure about that?

31

A. Yes.

Q. Now, what are you hoping to find in my client's room that is going to relate to Mr. Fortune's probation?

MS. SKORUPA:  Objection.

THE COURT:  Sustained.

Q. Did you have a belief that Mr. Fortune was committing crimes with my client prior to entering that room?

A. A belief and a suspicion, yes.

Q. You had a suspicion. And what was that suspicion?

A. That they could be working together in an unlawful manner.

Q. In what?

MS. SKORUPA:  Objection

THE COURT:  Sustained.

MR. BROCATO:  Judge, can I just follow up with a sidebar conference?

THE COURT:  You can.

(Whereupon the following transpired at sidebar.)

MR. BROCATO:  I mean, he says that he had a reason, a probable cause, to go into my client's room based upon some interaction with Mr. Fortune and this is a probation search.  I should be able to ask him what that is, especially after he says, you know – you know, I believe he is involved in some unlawful activity.

THE COURT:  This is in response to questioning, your questioning?

MR. BROCATO:  Right.

32

THE COURT: Ms. Skorupa, do you wish to be heard?

MS. SKORUPA: Judge, again, the probation search order in this case was never controverted. What Detective Rivera thought or presumed, or whatever, before he went to that house is irrelevant.

THE COURT: I agree with you.

MR. BROCATO: But it's a probable cause to -- to arrest him.

MS. SKORUPA: There was a search order executed in this case so they had the order signed off by the judge to go in. The probable cause determination is made based upon his search, pursuant to the order, of the entire premises.

MR. BROCATO: The search – probation search warrants and the case law that follows, okay, and even Houston says you have to delineate facts that would allow you to believe that there should be expansion of the search warrant.

THE COURT: Mr. Brocato, again – I don't mean to interrupt you again but that subject has never been raised. It was never controverted. We are long past the time when it would be appropriate to do so.

Defense counsel continued to argue that although he was not controverting the validity of the search warrant, he did assert that appellant had an expectation of privacy in his bedroom. The court opined that the question of whether there was some wrongdoing between appellant and Brandon Fortune was irrelevant.

(H-47-51, December 15, 2015).

Had he been permitted to inquire of Detective Rivera, defense counsel would have learned, as revealed from testimony during the trial, that appellant was specifically targeted to be searched. This became evident when probation officer

33

Nichols later testified at trial regarding his attendance at a pre-search briefing held at Babylon Town Hall.  At that time, he was given a diagram of the inside of 258 North Green Avenue and was assigned to search the room designated on the diagram as "Andy Gayot's room."

Nichols testimony was a strong indication that the probation search order was a merely a subterfuge used to gain entry into 258 North Green Avenue because law enforcement could not meet the more stringent probable cause requirements needed to obtain a proper search warrant.

Wherefore, appellant maintains that an issue regarding the scope of the pre-trial hearing has been preserved for appellate review and that the matter should be referred back to the trial court for a hearing to determine whether the evidence obtained as a result of the execution of the probation search order should be suppressed as well as all other evidence obtained as tainted by the violation of appellant's Constitutional Rights. Wong Sun v United States, 371 U.S. 471 (1963).

34

## POINT II

**THERE WAS NO PROBABLE CAUSE FOR THE ISSUANCE OF A LEGITIMATE SEARCH WARRANT AGAINST APPELLANT, ANDREW GAYOT AND THE PROBATION SEARCH ORDER, INSOFAR AS IT AUTHORIZED A SEARCH OF THE ENTIRE PREMISES IN WHICH PROBATIONER BRANDON FORTUNE RESIDED, WAS OVERLY BROAD AND AS SUCH ALLOWED FOR IT TO BE EMPLOYED AS A STRATEGY TO VIOLATE APPELLANT'S FOURTH AMENDMENT RIGHT TO BE FREE OF UNREASONABLE SEARCH AND SEIZURE.**

The core inquiry in any Fourth Amendment analysis is "whether a person has a reasonable expectation of privacy in the area searched. *United States v Biloanzich, 771 F.2d 292, 296* (7th Circuit, 1985). Appellant maintains that he had a legitimate expectation of privacy in his bedroom as well as the locked box found in a common area of his home. The Probation Search Order issued in this case against probationer Brandon Fortune was overly broad in scope and failed to account for the Fourth Amendment rights of third parties such as appellant.

The only factor provided as justification for conducting a search of the entire premises of 258 North Greene Avenue was the allegation that probation officer Jose Martorell had, under some unexplained circumstance, observed a gun cleaning kit in the room occupied by probationer, Brandon Fortune. (T-28, June 6, 2016). However, it was also plainly evident from the testimony regarding the pre-search briefing held at Babylon Town Hall, that appellant was at least an object, if not the main object of the search conducted at 258 North Greene Avenue in

Lindenhurst. (T-38, June 1, 2016).   This also became evident when Detective Rivera testified at the pre-trial hearing that there was a belief and a suspicion that appellant and Mr. Fortune were committing crimes together. (H-48, December 15, 2015).  Defense counsel was not permitted to continue questioning the detective regarding this "suspicion" however, it would not be unreasonable to speculate that this belief was not sufficient to permit the issuance of a legitimate search warrant.

Probation Officer Jeffrey Nichols testified that he was given the task of assisting Detective Rivera in searching appellant's room.  He candidly stated that he and the others were provided with photos of the male occupants of the house and a diagram of the inside on which the appellant's room was labeled "Andy Gayot's room. (T-38, June 1, 2016).  Notably, Probation Officer Nichols could not recall any discussion during the pre-raid meeting about an informant seeing a gun in Brandon Fortune's room. (T-21, June 1, 2016).

It would be naïve to unquestionably accept the notion that this entire search effort, staffed as it was by tactical response officers of the Emergency Service Unit, FBI agents and some 25 other law enforcement agents, all connected to a federal gang task force, was motivated solely by the need to search the premises of a misdemeanor probationer.  There can be little doubt that had appellant's counsel been permitted to inquire into the circumstances of the "search order" the thin veneer of legitimacy supplied by the [probation] search order would have quickly

36

dissolved.

Appellant, Andrew Gayot, had a Fourth Amendment privacy interest in being free from an unreasonable invasion and search of his home. The "probation search order" which only served to protect Brandon Fortune, the person named in the search order, from an unreasonable search and seizure, did nothing to protect appellant's interest in the privacy of his home and the unjustified intrusion of the police. Therefore, even assuming that the "probation search order" was issued for a legitimate purpose, it was overly broad when it permitted a search of appellant's entire premises at 258 North Greene Avenue.

In *Steagald v United States*, 451 U.S. 204, 212 (1981), the court wrote that "The purpose of a warrant is to allow a neutral judicial officer to assess whether the police have probable cause to make an arrest or conduct a search. As we have often explained, the placement of this checkpoint between the Government and the citizen implicitly acknowledges that an "officer engaged in the often competitive enterprise of ferreting out crime (citations omitted) 'may lack sufficient objectivity to weigh the strength of the evidence supporting the contemplated action against the individual's interests in protecting his own liberty and the privacy of his home." The judicial determination authorizing the issuance of the search order in this case was based solely upon a determination of what would constitute "reasonable cause" to conduct a search of a probationer. "An [arrest] warrant, ... is

issued upon a showing of probable cause to believe that the legitimate object of a search is located in a particular place, and therefore safeguards an individual's interest in the privacy of his home and possessions against the unjustified intrusions of the police." (*Steagald*, supra at 213).

Here, the "probation search order" was issued based upon what would be reasonable in the case of someone subject to supervision by virtue of his status as a probationer. In *People v Suttell*, 109 A.D.2d 249 (4th Dep't 1985), the Court wrote that "... a person's status as a probationer or parolee does not extinguish his 4[th] Amendment protection against unreasonable search and seizure (citations omitted). It is also well established that such status is relevant in determining the reasonableness of a search; what is reasonable in the case of a probationer or parolee may be unreasonable in the case of a person who is not under legal custody and continuing supervision (citing, *People v Huntley*, 43 NY2d 175, 181; Bellacosa, Practice Commentary, McKinney's Cons Laws of NY, Book 11A, CPL 410.50, p 262).

Accordingly, while "reasonable cause" may have been established to issue a search order pursuant to CPL 410.50 directed at Brandon Fortune, it could not and should not have been interpreted and executed in a manner so as to diminish appellant's right to be free of unreasonable search and seizure. Appellant was not a probationer, did not consent to a search of his separate space and did not consent

38

to a search of the locked box found in the common area of his residence at 258 North Green Avenue.   Appellant had a reasonable expectation of privacy which demanded to be recognized.

Wherefore, appellant's conviction should be reversed and the matter returned to the trial court for a new hearing to determine whether the evidence obtained as a result of the probation search order as well as all evidence obtained as "fruit of the poisonous tree," Wong Sun v United States, 371 U.S. 471 (1963) should be suppressed.

## POINT III

**APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AT MULTIPLE STAGES OF THE PROCEEDING DURING WHICH HE WAS REPRESENTED BY THREE SEPARATE COUNSEL: COUNSEL # 1 FAILED TO PROPERLY ALLEGE GROUNDS SUPPORTED BY A SWORN AFFIDAVIT OF FACTS IN SUPPORT HIS MOTION TO SUPRESS EVIDENCE OBTAINED AS A RESULT OF A PROBATION SEARCH ORDER WHICH WAS EXECUTEED AT APPELLANT'S HOME AND RESULTED IN HIS ARREST ON FEBRUARY 25, 2014, AS REQUIRED BY CPL 710.60 (1);**

**ASSIGNED COUNSEL # 2, WHO CONDUCTED THE SUPRESSION HEARING WAS CLEARLY NOT FAMILIAR WITH THE FACTS SURROUNDING THE PROBATION SEARCH ORDER AND FAILED TO FIRMLY ADVOCATE FOR FURTHER INQUIRY REGARDING THE CIRCUMSTANCES OF THE PROBATION SEARCH ORDER, AND**

**COUNSEL # 3 FAILED TO MOVE PURSUANT TO CPL 255.20 (3) TO REOPEN THE SUPRESSION HEARING WHEN ADDITIONAL FACTORS WERE REVEALED DURING THE TRIAL CONCERNING THE SEARCH OF APPELLANT'S PREMISES BEFORE HIS ARREST ON FEBRUARY 25, 2014, ALL OF WHICH RESULTED IN AN ACTUAL OR CONSTRUCTIVE DENIAL OF THE RIGHT TO COUNSEL AND TO THE EFFECTIVE ASSISTANCE OF COUNSEL**

Both the State and the Federal Constitutions guarantee a defendant the right to the effective assistance of counsel. U.S. Const., amend. IV, N.Y. Const. Art. I. §6. Where errors of trial counsel are attributable to unusual or innovative trial strategies and only hindsight and the failure of the strategy reveal any error, an attorney's efforts will not be considered inadequate. See *People v. Jackson*, 52 N.Y. 2d 1027 (1981); *People v. Shannon*, 92 A.D. 2d 554 (2nd Dep't 1983).

In examining a case of ineffective assistance, the core of the inquiry is

40

whether a defendant received "meaningful representation" and whether an attorney's conduct constituted "egregious and prejudicial" error such that defendant did not receive a fair trial. See, *People v. Benevento*, 91 N. Y. 707 (1998); *People v. Rivera*, 71 N.Y. 2d 705, 709 (1988); *People v. Flores*, 84 N.Y. 2d 184 (1995); *People v. Hobot*, 84 N.Y. 2d 1021, 1022 (1995); *People v. Satterfield*, 66 N.Y. 2d 796, 798-799 (1985).

While the standard for determining effectiveness of counsel cannot be precisely defined, ""it is elementary that the right to effective representation includes the right to the assistance of an attorney who has taken the time to review and prepare both the law and the facts relevant to the defense (*People v. Bennett*, 29 N.Y. 2d 462) and who is familiar with and able to apply at trial basic principles of law and procedure (*People v, LaBree*, 34 N.Y. 2d 257..."

When a defendant is "deprived of effective assistance of counsel, it is irrelevant whether there was overwhelming evidence of guilt: People v. Rodriguez, 94 AD2d 805, 807 (2[nd] Dep't. 1983).

In *Hurrell-Harring v. State of New York*, 15 N.Y.3d 8 (2010) the Court of Appeals, citing *United States v. Cronic*, 466 U.S. 648, 654-655 (1984) quoted the following: "[I]f no actual "Assistance" for the accused's defense is provided, then the constitutional guarantee has been violated. To hold otherwise could convert the appointment of counsel into a sham and nothing more than a formal

41

compliance with the Constitution's requirement that an accused be given the assistance of counsel. The Constitution's guarantee of assistance of counsel cannot be satisfied by mere formal appointment."

In *Hurrell-Harring, Supra*, the court held that plaintiff's complaint stated a claim for constructive denial of the right to counsel by reason of insufficient compliance to the Constitutional mandate of *Gideon* in that plaintiffs were regularly going unrepresented at arraignment and subsequent critical stages.

Appellant here was represented by three separate attorneys during the course of his prosecution for crimes that carried a substantial sentence. Each of these attorneys, when reviewing the evidence, the law and the circumstances of this case at the time of representation, contributed to an overall lack of meaningful representation. (see, *People v. Baldi*, 54 N.Y. 2d 137, 147 (1981).

Appellant contends that the lack of consistency, vertical representation if you will, resulted in a chain of causation that amounted to a lack of meaningful representation that directly related to the issue raised in Point I herein. To borrow from an ancient proverb "for want of a nail the shoe was lost, etc."

**Counsel #1**

On March 13, 2014, when appellant was arraigned on indictment #482-2014, he was represented by Defense counsel #1 who submitted an omnibus motion seeking suppression of tangible property seized from appellant at the time of his

arrest.  However, the motion failed to properly state the grounds upon which the motion was being made or to contain sworn allegations of fact supporting the grounds.  Instead, the motion simply recited the following:

1. On or about February 25, 2014, the defendant was arrested by officers of the Suffolk County Police Department.  At the time of the arrest, the defendant had not committed any crime or traffic offense.  The police illegally arrested the defendant,
2. The police had no right to search or arrest the defendant.
3. The arresting officers took several items of tangible property from the defendant.  The arresting officer did not observe the defendant commit a crime nor have any reasonably trustworthy information supporting the conclusion that the defendant had committed a crime. The arrest was thus without probable cause and in violation of the defendant's Constitutional Rights [United States Constitution, Amendments IV and XIV; New York Constitution, Article I, Section [2].

(Appendix A7-A9).

Attached to the motion was appellant's sworn affidavit in which he essentially denied the allegations contained in the indictment but only addressed the grounds for the suppression of evidence recovered at the time of his arrest in general terms as follows:

4. It is my understanding from my attorney that, the arrest was without probable cause and in violation of the defendant's Constitutional Rights...

(Appendix A20).

Although appellant has argued in Point I that there was sufficient justification for both the motion court and the hearing court to have permitted the appellant a full hearing to challenge the probation search order, it appears that none of the three attorneys representing appellant completely understood the crucial role

43

played by the probation search in appellant's conviction.

Based upon the facts revealed at the suppression hearing, the circumstances of the search included the fact contraband had been recovered from the bedroom of appellant's home.  There was no testimony from law enforcement personnel who testified at the hearing that law enforcement personnel announced to occupants of the home that they were conducting their early morning raid pursuant to a probation search order.

However, appellant certainly knew that his home had been entered and his bedroom searched before his arrest by law enforcement agents during the early morning hours of February 25, 2014.  It would have taken no more than a brief discussion with appellant for his attorney to become aware of the manner in which the search was conducted and to provide the court with a sworn affidavit of facts concerning the circumstances of his arrest in support of his motion under CPL 710.60(1) to suppress the evidence found in his home and bedroom.

Compounding the problem with counsel's moving papers, was the fact that the motion was not decided until March 4, 2015, the same date on which appellant was arraigned on the second indictment (462-15) and assigned a new attorney. Thus, although the prosecutor's affirmation highlighted a deficiency in appellant's moving papers, neither attorney took responsibility for responding to this new information.  Under ordinary circumstances, defense counsel would have taken

44

note of the newly acquired information and submitted a reply affirmation addressing the search order, but no such reply was forthcoming. It appears therefore that accountability for appellant's representation was lost when the baton was passed from the first to the second attorney.

**Counsel #2**

On December 15, 2015, appellant was represented by the new attorney (counsel #2) on a hearing ordered pursuant to the court's decision on the Omnibus motion made by his first attorney. When the court questioned the attorneys as to the parameters of the hearing, the prosecutor stated the following:

> "Judge, based upon the decision of Justice Fernando Camacho dated March 4, 2015, my understanding of these hearings is that they are limited to both a Huntley and Wade hearing on consent as well as a Dunaway hearing solely for the purpose of establishing there was probable cause for the initial arrest in this case on February 25, 2014 and that any statements subsequent to that will be established at this hearing.
>
> The decision itself also made reference to a Mapp issue. And I'll quote it. It states: The branch of the defendant's motion which seeks suppression of physical property recovered is granted to the extent that a Mapp hearing is to be held prior to trial to determine the admissibility of any physical property recovered from the defendant subsequent to his arrest that was not part of a search warrant.
>
> And then the decision goes on to address the search warrants that were executed.
>
> In this particular case the People are asserting that there was no evidence recovered subsequent to the defendant's arrest that was not part of a search warrant. In addition, the initial search of the home that led to the defendant's arrest was the result of a search order which will be testified about."                                 (T-3,4, December 15, 2014)

When the court asked defense counsel # 2 to outline his position with respect to the parameters of the hearing, he stated the following:

> "Judge, I agree that we have a Huntley hearing or Wade hearing and a Dunaway hearing. I'm just not sure if everything that was listed in the search warrants is also not – there are – I believe there are additional things that were seized that were not sought in the search warrant. And I think I should be able to inquire about those limited things."

(T-4, December 15, 2015)

The court responded to this exchange by stating that it would leave the matter open pending defense counsel's providing some basis for relief. However, when counsel #2 cited items not recovered pursuant to the search warrants executed subsequent to appellant's arrest, the prosecutor stated that those items were recovered pursuant to the [probation] search order which had never been controverted in the motion papers. The prosecutor stated that those items established the probable cause for the appellant's arrest on February 25, 2014. (T-6, December 15, 2015)

Notwithstanding the inconsistency of the People's argument that the evidence procured as a result of the probation search provided the probable cause for appellant's arrest, appellant's attorney was consistently hindered in his attempts to question the People's witnesses regarding the facts surrounding the early morning raid made by law enforcement personnel on appellant's home. (See Point I).

46

**Counsel #3:**

Appellant's last opportunity to challenge the legality of the probation search order occurred at trial when Probation Officer Jeffery Nichols testified about his participation in a pre-search briefing held in the parking lot of the Babylon Town Hall. Probation Officer Nichols explained that he was provided with a diagram of the interior of appellant's residence on which appellant's room was labeled "Andy Gayot's room." (T-23, 38, June 1, 2016). This information, especially when viewed in conjunction with that of Detective Rivera when he testified at the pre-trial hearing that "there was a belief and a suspicion that appellant and probationer had been working together in an unlawful manner," consisted of information that appellant could not, with due diligence, have been aware of at the time his first attorney made a pre-trial motion to suppress the physical evidence recovered from appellant's bedroom. (T-49, December 15, 2015). This information was also strongly indicative of the fact that the [probation] "search order" was used as a subterfuge to gain entry to 258 North Greene Avenue without the necessity of demonstrating the level of probable cause required for the issuance of a "search warrant."

Appellant could not have, with due diligence, been previously aware of this information before the determination of the pre-trial motion to suppress the physical evidence recovered from his bedroom. At this point, counsel #3 should

have moved under CPL 255.20(3) and 710.40(4) to renew the pre-trial motion to suppress the physical evidence recovered prior to appellant's arrest on February 25, 2014.

It is apparent that a contributing factor behind the ineffective assistance of counsel provided to appellant in his defense was largely due to the lack of primary accountability for the outcome of appellant's representation. The search and seizure of property in his bedroom on February 25, 2014 represented a gross violation of appellant's Fourth Amendment right to be free of unreasonable search and seizure.

Therefore, the totality of the record reveals that each of appellant's defense counsel failed to protect appellant's Fourth Amendment rights. His conviction should be vacated and a new trial ordered.

## POINT IV

## THE IMPOSITION OF CONSECUTIVE SENTENCES AMOUNTING TO AN AGGREGATE DETERMINATE SENTENCE OF 32 YEARS WITH 25 YEARS OF POST RELEASE SUPERVISION ON APPELLANT, WAS HARSH AND EXCESSIVE AND SHOULD BE MODIFIED IN THE INTEREST OF JUSTICE.

The legislature has granted the Appellate Division the discretionary power to reduce or modify an unduly harsh or excessive sentence in the interest of justice. C.P.L. §470.26(6); *People v. Delgado,* 80 N.Y.2d 780 (1992); *People v. Pollenz,* 67 N.Y.2d 264 (1986). In reviewing a sentence, this Court may even substitute its discretion for that of the trial court, enabling it to coordinate sentencing policy through the development of sentencing criteria. *People v. Suitte,* 90 A.D.2d 80, 86 (2nd Dep't. 1982).

It is a precept of justice that punishment should be graduated and proportional to the offense. *Weems v. U.S.* 217 U.S. 349 (1910). The reviewing Court must consider all of the elements involved concerning the crime and the wrongdoer. A sentence must not only encompass a defendant's misconduct, but it must also evaluate the possibilities of rehabilitation of the defendant as a useful and responsible member of the community. *See People v. Mastropolo,* 81 A.D.2d 623, 624 (2nd Dep't. 1981) (O'Conner J., dissenting); *People v. Cotter,* 25 A.D.2d 609, 610 (4th Dep't. 1966).

## ORDER DIRECTING SEARCH

SUFFOLK FIRST DISTRICT COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK

---

TO:  Jose A Martorell

      Probation Officer

      SUFFOLK COUNTY PROBATION DEPARTMENT

---

The defendant, Brandon .C. Fortune, having been convicted of:

PL 265.01  A M 4 - CRIMINAL POSSESSION WEAPON - 4TH DEGREE
VTL 1192.3 U M 0 - DRIVING WHILE INTOXICATED-1st OFFENSE

and having been given a sentence of probation on 09/09/2013,  subject to
specified conditions, is currently under the supervision of the Suffolk
County Probation Department. With proof by affidavit, having been this day
made before me by Probation Officer Jose A Martorell, that there is
reasonable cause to believe that the probationer has violated the said
conditions by possessing illegal drugs and illegal weapons.

It is hereby ordered that Probation Officer Jose A Martorell, along with
his agent, is authorized to search the person of said defendant, Brandon C.
Fortune, and the entire premises in which he resides at 258 N Greene Ave,
Lindenhurst, NY 11757, including any vehicles and outbuildings on the
premises, and  any real or personal property which he owns or which is in
his possession for illegal drugs and illegal weapons.

FURTHER, a no-knock endorsement is hereby authorized.


                    ENTER,


                    _____
                    Justice of the Suffolk First District Court

                    Suffolk County, N. Y.


                    Dated:_____

                    Time:_____


# A2

the prosecution to comply or precluding the introduction of evidence, at trial, relating to the information requested in the Demand for Discovery [CPL §§240.40(1)(b) and 240.70(1)].

3.      A timely response to a Demand for Discovery is significant in view of the recent Court of Appeals decision in People v. Mendoza, 82 N.Y.2d 415 (1993).  In Mendoza, the Court recognized the importance of a Demand for Discovery in preparation of a motion to suppress evidence; in fact, the Court observed that a Demand for Discovery is a factor to consider in determining whether the moving papers are sufficient to grant a hearing on a motion to suppress.

4.      In the present case, by failing to timely comply with the Demand for Discovery, the prosecution has effectively denied the defendant of the opportunity to use the Demand for Discovery in the motion to suppress presently pending.

5.      In the alternative to an order of preclusion for failing to comply with Demand for Discovery, the Criminal Procedure Law Section 240.40(1)(b) requires the Court to order the prosecution to comply with the Demand for Discovery.  Consequently, if the Court denies the motion for preclusion, then the Court must enter an order requiring the prosecution to comply with the Demand for Discovery [Exhibit "D"].

# A17

female by intimidation and physical force. That I had sexual intercourse with a      year old female. The police claim I was in possession of a quantity of cocaine. The police claim I was in possession of a stun gun. The police claim I was in possession of a noxious material. The police claim I was in possession of drug paraphernalia.

3.     These allegations by police officers are false and untrue. I did not advance or profit from prostitution by unlawfully providing drugs to a person who was patronized with the intent to impair the person's judgement. I did not threaten anyone with physical injury or death if they did not engage in prostitution. I did not run a house of prostitution or enterprise involving two or more prostitutes. I did not knowingly advance or profit from prostitution. I did not abduct another person. I did not restrain another person. I did not strangle anyone. I did not obstructed anyone's breathing. I did not have sexual intercourse with anyone under the age of 17 years old. I did not have sexual intercourse with anyone without their consent. I did not engage in oral sexual conduct with another less than 17 years old. I did not do anything to the mental or moral welfare of a child less than 17 years old. I did not possess cocaine with the intent to sell it. I did not possess a quantity of cocaine. I did not possess any controlled substance. I did not possess a stun gun. I did not possess noxious materials.

4.     It is my understating from my attorney, that the arrest was without probable cause and in violation of the defendant's Constitutional Rights [United States Constitution, Amendments IV and XIV; New York Constitution, Article I, Section 12].

5.     The defendant has received notice from the prosecution that they intend to introduce, at trial, several statements which I allegedly made. All evidence obtained from the

A20

(7)    Granting the motion to precluded [*sic*] the introduction of information requested in the demand for discovery because the prosecutor failed to serve a response to the demand pursuant to CPL sections 240.40(1)(a) and 240.70(1); and

(8)    Granting such other and further relief as is just and proper.

## MOTION TO SUPPRESS ALL EVIDENCE OBTAINED AS A RESULT OF DEFENDANT'S ALLEGEDLY UNLAWFUL ARREST OR, IN THE ALTERNATIVE, FOR A *DUNAWAY/MAPP* HEARING

4.      Defendant moves this Court, pursuant to CPL section 710.20(1), (3) and (6), to "suppress all evidence (including physical evidence, statements and identification evidence) obtained from the exploitation of his unlawful arrest." See *Omnibus Motion, Attorney Affirmation,* section I, paragraph 5. Defendant initially moves that said motion be granted summarily pursuant to CPL section 710.60(2) or, in the alternative, Defendant requests a *Dunaway/ Mapp* hearing. Additionally, he requests pursuant to *People v. Peacock,* 31 NY2d 907 (1972), that said hearing be held sufficiently prior to commencement of trial to permit the hearing minutes to be transcribed for use at trial. Preliminarily, the People consent to Defendant's motion under *Peacock* regarding the timing of said hearing, should it be granted. However, it is the People's contention that Defendant's *Dunaway/ Mapp* motion is without merit and should be denied in its entirety, as Defendant's arrest was lawful and any evidence obtained prior and subsequent to said arrest was lawfully obtained. It should be noted that said arrest was the result of the execution of a lawfully-obtained probation Search Order conducted by the Suffolk County Probation Department with the assistance of the Suffolk County Police Department on the home of Brandon Fortune, an individual with whom Defendant was residing at 258 North Greene Avenue in Lindenhurst, Suffolk County, New York at the time of his arrest. An unsigned copy of said Search Order is attached herein as Exhibit "A." It is the People's understanding, upon information and belief, that a signed copy of said Order which

A24

3